**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2316

_____

BELAL ELNAGGAR,
Appellant

v.

GREGORY ALLARD; J. SCOTT WATSON;
J. SCOTT WATSON, P.C.; WATSON AND ALLARD P.C.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-19-cv-03743)
District Judge:  Honorable John M. Younge

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 19, 2023

_____

Before:  GREENAWAY, JR., PHIPPS, and CHUNG, <u>Circuit Judges</u>

(Filed: May 23, 2023)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHUNG, Circuit Judge.

Belal Elnaggar sued attorneys Gregory Allard and Scott Watson and their law firms (collectively, "the defendants"), claiming they violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, by sending him a misleading message, engaging in unfair litigation tactics, and withholding his academic transcript. The District Court dismissed the amended complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, we will affirm the order of the District Court.

I.[1]

Elnaggar is a former student of the University of Pennsylvania ("Penn") who failed to make payments on two student loan debts: one in the amount of $5,899.99 and a second, a Perkins loan, in the amount of $2,326.90. In 2013, the defendants filed suit in Philadelphia Municipal Court and obtained a default judgment on behalf of Penn to recover the entirety of this debt. They later voluntarily withdrew the case.

Elnaggar sought to obtain a copy of his academic transcript from Penn, but Penn denied the request. In the course of exchanging messages concerning the transcript, Allard sent Elnaggar's attorney an email message on August 20, 2018. At that time, the statute of limitations to sue for debt recovery had run on all but the Perkins loan. The email read, "Our client's position is that there is an outstanding balance owed for the Federal Perkins Loan and that they have a right to continue to pursue it. The statute of

---

[1] Because we write for the parties, we recite only facts pertinent to our decision.

limitations has not expired.  See 20 USCS 1091a."  Appendix ("App.") 56.  The message concluded:  "This communication is from a debt collector."  Id.  Approximately 15 months later, different attorneys representing Penn filed suit against Elnaggar in Georgia, where Elnaggar now lives, to recover the Perkins loan debt.

Elnaggar filed an FDCPA complaint, and the defendants moved to dismiss it.  The District Court granted the defendants' motion with leave for Elnaggar to amend the complaint.  Elnaggar filed an amended complaint and the defendants again moved to dismiss.  The District Court granted the motion and dismissed the amended complaint with prejudice.

Elnaggar timely appealed.

## II.[2]

The FDCPA provides, in relevant part, that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  This prohibition includes "[t]he false representation of the character, amount, or legal status of any debt," § 1692e(2)(A), and "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," § 1692e(5).  The FDCPA further provides more generally that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  § 1692f.

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). We have jurisdiction to review the District Court's dismissal pursuant to 28 U.S.C. § 1291.  We review the dismissal de novo, accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of Elnaggar, the non-moving party.  See Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006).

We construe the FDCPA broadly and consider communications from lenders to debtors from the perspective of the "least sophisticated debtor."[3] Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006). This standard ensures protection of all consumers, both gullible and shrewd. Id. The least sophisticated debtor, "though gullible, does not subscribe to bizarre or idiosyncratic interpretations of collection notices" and possesses "a quotient of reasonableness." Hopkins v. Collecto, Inc., 994 F.3d 117, 122 (3d Cir. 2021) (citations omitted).

A.

Elnaggar fails to state an FDCPA claim regarding Allard's August 20, 2018, message. Nothing in that message would mislead the least sophisticated debtor as to the status, character, or amount of the Perkins loan, nor did the message threaten action that could not "legally be taken" or that was not "intended to be taken." See 15 U.S.C. §§ 1692e(2)(A) and 1692(e)(5). The message states that the "client" — that is, Penn — intends to continue to pursue the Perkins loan debt. See App. 56. Penn currently is doing just that via litigation in Georgia and, as Elnaggar concedes, Penn has a right to do so.

---

[3] Communications like the one here, sent by one attorney to another, can give rise to liability under the FDCPA. See Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir. 2011) (holding that communications directed to an attorney are actionable because "[a] communication to a consumer's attorney is undoubtedly an indirect communication to the consumer" (citations omitted)). Some circuits have adopted a more stringent "competent attorney" standard to apply to such communications between counsel in lieu of the lenient "least sophisticated debtor" analysis. See, e.g., Evory v. RJM Acquisitions Funding, LLC, 505 F.3d 769, 774–75 (7th Cir. 2007) (concluding that a representation is not actionable if it would be unlikely to deceive a competent lawyer). We have yet to adopt the "competent attorney" standard and need not consider doing so in this case. To the extent the standard is relevant at all, Elnaggar's claims fail even under the "least sophisticated debtor" standard.

4

See Elnaggar Br. 3 ("It is undisputed that Appellant owed $2,326.90 on his Perkins Loan, and [a] lawsuit to collect on this portion of the debt is not barred by the applicable statute of limitations."). In other words, the message did not mislead Elnaggar as to the status (actionable with intent to pursue) nor amount (Perkins loan only) of the loan and the message likewise did not improperly threaten Elnaggar.

Elnaggar suggests that Allard, by sending the message on Penn's behalf, misled his attorney in violation of the FDCPA because Penn did not ultimately engage Allard to pursue the Georgia litigation, instead hiring different counsel. Yet Elnaggar points to no requirement that Penn must employ the defendants to conduct its litigation. See Evankavitch v. Green Tree Servicing, LLC, 793 F.3d 355, 361 (3d Cir. 2015) (reiterating that plaintiffs bear the burden of proving their FDCPA claims). We see nothing false, deceptive, or misleading about Penn's selection of new counsel to pursue its timely Perkins loan collection action in Elnaggar's home state.

B.

Elnaggar next claims that the defendants' litigation tactics are unfair or unconscionable in violation of 15 U.S.C. § 1692f. The amended complaint alleges that the defendants filed the 2013 collection action but did not properly serve it on Elnaggar in order to obtain a default judgment against him. The defendants then allegedly "sat on such default judgment" until 2018, withdrawing it "[i]mmediately after [Elnaggar] obtained representation," only to later file a new action in Georgia. App. 53.

An FDCPA claim must be brought within one year from the date of the violation. Glover v. FDIC, 698 F.3d 139, 148 (3d Cir. 2012); 15 U.S.C. § 1692k(d). Elnaggar filed

5

his original complaint on August 20, 2019, followed by the amended complaint on April 14, 2021. Elnaggar's claims related to the service of the 2013 collection action and default judgment are thus clearly untimely. See Rotkiske v. Klemm, 140 S. Ct. 355, 358 (2019) (holding that the FDCPA's statute of limitations begins to run on the date on which the alleged violation occurs, not on the date of the violation's discovery).

While Elnaggar's claims concerning the more recent Georgia litigation may fall within the statute of limitations, Elnaggar fails to set forth a viable claim of litigation abuse against the defendants. He does not, for instance, allege that venue in Georgia is improper or that the suit is frivolous, and he no longer alleges that the defendants are involved in that litigation at all. He instead suggests that the defendants had a duty to disclose that Penn might file a suit in a court other than Philadelphia Municipal Court, where the 2013 suit was filed; he offers no authority, however, to support the existence of such a duty.

Similarly, Elnaggar argues without support that the timing of the Georgia suit is unfair. Yet it is Penn's right to pursue the debt via litigation at any time because the collection of the Perkins loan is not subject to a statute of limitations. See, e.g., United States v. Lawrence, 276 F.3d 193, 196 (5th Cir. 2001) (holding that 20 U.S.C. § 1091a eliminates all limitations defenses).

Elnaggar also relies upon Hess v. Cohen & Slamowitz, a case in which the Court of Appeals for the Second Circuit held that the FDCPA's venue provision prevents "forum abuse," which is "an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to

6

appear, hence permitting the debt collector to obtain a default judgment." 637 F.3d 117, 120 (2d Cir. 2011) (internal citations and quotation marks omitted). Even if we were to adopt that rule, an issue not decided herein, in Elnaggar's situation, Georgia is his home state, and he does not allege that the forum is distant or inconvenient or that Penn has currently obtained a default judgment against him, making Hess inapposite. Elnaggar instead intimates that venue in Georgia prejudices him by depriving him of his choice of counsel, but again, he offers no case law to support this novel theory and we fail to see how the change in counsel qualifies as unfair or unconscionable.

Lastly, even if Elnaggar had established that the timing, location, or choice of counsel for the Georgia suit are legally significant in his case, Elnaggar did not allege any facts connecting the defendants to that suit. The failure to provide a theory of liability on the defendants' part is fatal to these claims.

C.

Finally, the amended complaint claims that the defendants violated the FDCPA by "keeping the status of Plaintiff's transcripts in limbo," by failing to "notify the consumer[] of creditor's position with respect to . . . his academic transcript," and by "assert[ing] a lien on consumer's academic transcripts implicitly [sic]." App. 55, 59. In his brief, however, Elnaggar presents no arguments in support of the claims related to the academic transcript.

"[A]ppellants are required to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief." Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993). When they do not, the issues are "abandoned . . . on appeal and .

. . need not be addressed by the court of appeals." Id. (citations omitted). We therefore decline to address any abandoned claims concerning the failure to release Elnaggar's academic transcript.[4]

III.

For the foregoing reasons, the amended complaint fails to state an FDCPA claim against the defendants. We therefore will affirm the District Court's order.

---

[4] Even if we were to consider these claims, the amended complaint fails to allege facts connecting the defendants to Penn's decision to withhold the academic transcripts. Moreover, Elnaggar fails to cite case law supporting a theory that withholding transcripts violates the FDCPA.